UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER C. G.,[1] <br>       Plaintiff, <br>     v. <br> KILOLO KIJAKAZI, <br> Acting Commissioner of Social Security, <br>       Defendant. | Case No. 5:22-cv-02192-MAR <br><br> MEMORANDUM AND ORDER |

Plaintiff Jennifer C. G. ("Plaintiff") seeks review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or "Agency") denying her application for Title XVI Supplemental Security Income Benefits ("SSI"). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

For the reasons stated below, the Commissioner's decision is **REVERSED**, and this action is **REMANDED** for further proceedings consistent with this Order

///

///

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

# I.

# **PROCEDURAL HISTORY**

On September 25, 2019, Plaintiff filed her application alleging a disability onset beginning August 21, 2018. Administrative Record ("AR") at 15. Plaintiff's claim was initially denied on February 13, 2020, and again upon reconsideration on June 30, 2020. Id. at 132–36, 140–45. On August 10, 2020, Plaintiff requested a hearing before an ALJ. Id. at 146–48.

On January 10, 2022, Plaintiff, represented by counsel, testified telephonically before an ALJ presiding in Palmdale, California. Id. at 33, 51–61. A medical expert ("ME") and a vocational expert ("VE") also testified telephonically. Id. at 38–51, 61–66. On January 18, 2022, the ALJ issued a decision denying the application. Id. at 12–32. Plaintiff filed a request with the Agency's Appeals Council to review the ALJ's decision, which the Council denied on October 28, 2022. Id. at 1–6, 270–72.

On December 12, 2022, Plaintiff filed a complaint in the instant action. ECF Docket No. ("Dkt.") 1. Plaintiff filed a brief in support of the complaint ("Br.") on April 14, 2023. Dkt. 16. Defendant filed an opposition brief ("Opp'n") on May 18, 2023. Dkt. 21.

# II.

# **PLAINTIFF'S BACKGROUND**

Plaintiff was forty-six (46) years old on the alleged onset date and forty-eight (48) years old by the time of the administrative hearing.[2] AR at 25, 51. Plaintiff has a high school education and prior work history as a sales representative and activities director/scout. Id. at 24. She alleges disability based on the following impairments: (1) post-traumatic stress disorder ("PTSD"); (2) anxiety; (3) depression; (4)

---

[2] Accordingly, Plaintiff was considered a "younger person" on her alleged onset date and at the time of the hearing. AR at 25; see Lockwood v. Comm'r Soc. Sec. Admin., 616 F.3d 1068, 1069 (9th Cir. 2010) (explaining that social security regulations define "younger persons" as "under age 50"); 20 C.F.R. § 416.963(c)-(d).

2

fibromyalgia; (5) migraines; (6) osteoarthritis; (7) hip dysplasia; and (8) asthma. Id. at 132.

## III.
## **STANDARD FOR EVALUATING DISABILITY**

To qualify for benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents her from engaging in substantial gainful activity, and that is expected to result in death or to last for a continuous period of at least twelve (12) months. 42 U.S.C. § 423 (d)(1)(a); Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998). The impairment must render the claimant incapable of performing the work she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

To decide if a claimant is disabled, and therefore entitled to benefits, an ALJ conducts a five-step inquiry. Ford v. Saul, 950 F.3d 1141, 1148–49 (9th Cir. 2020); 20 C.F.R. § 416.920. The steps are:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

(3) Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.[3]

(4) Is the claimant capable of performing work she has done in the past? If so, the claimant is found not disabled. If not, proceed to step five.

---

[3] "Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's [residual functional capacity]," or ability to work after accounting for [her] verifiable impairments. Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222–23 (9th Cir. 2009) (citing 20 C.F.R. § 416.920(e)). In determining a claimant's residual functional capacity, an ALJ must consider all relevant evidence in the record. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006).

1    (5) Is the claimant able to do any other work? If not, the claimant is found
2        disabled. If so, the claimant is found not disabled.

See Tackett, 180 F.3d at 1098–99; see also 20 C.F.R. § 416.920(b)–(g)(1); Bustamante v. Massanari, 262 F.3d 949, 953–54 (9th Cir. 2001).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Ford, 950 F.3d at 1148; Bustamante, 262 F.3d at 953–54. Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. Id. at 954. If, at step four, the claimant meets her burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"), age, education, and work experience. 20 C.F.R. § 416.920(g)(1); Tackett, 180 F.3d at 1098–99, 1100; Reddick, 157 F.3d at 721.

## IV.
## THE ALJ'S DECISION

**A.  STEP ONE**

At step one, the ALJ found that Plaintiff has not "engaged in substantial gainful activity since September 25, 2019, the application date[.]" AR at 17.

**B.  STEP TWO**

At step two, the ALJ found Plaintiff has the following severe impairments: mild early osteoarthritis of the bilateral knees, mild degenerative joint disease of the right hip, minimal degenerative disc disease and spondylosis of the lumbar spine, and right shoulder rotator cuff impingement. AR at 17–18. The ALJ found that Plaintiff's fibromyalgia, cyclic vomiting syndrome, migraines, and asthma were non-severe. Id. at 18. She also found that Plaintiff's depression, anxiety disorder, and PTSD were non-severe and caused only mild mental limitations. Id. at 18–19.

///

## C.   STEP THREE

At step three, the ALJ found Plaintiff does not "have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1[.]"  AR at 20.

## D.   RFC DETERMINATION

The ALJ found Plaintiff had the RFC to perform light work[4] as defined in 20 C.F.R. § 416.967(b) except:
> she can carry only 10 pounds, and with the right (dominant) upper extremity can never lift above shoulder and occasionally reach above shoulder.  She can stand 30 minutes at a time for two hours and walk 20 minutes at a time for one hour for [a] total of three hours standing and/or walking in an eight-hour workday, and sit 60 minutes at a time for six hours in an eight-hour workday.  She can never squat and occasionally climb stairs, crouch and stoop.  She can never work around hazards such as ladders, heights, heavy vibratory machinery, and extreme cold.

AR at 20.

## E.   STEP FOUR

At step four, the ALJ found that Plaintiff is unable to perform her past relevant work as a sales representative (Dictionary of Occupational Titles ("DOT") 274.357-018) or an activities director/scout (DOT 187.117-046).  AR at 24.

## F.   STEP FIVE

At step five, the ALJ found that "[c]onsidering [Plaintiff]'s age, education, work experience, and [RFC], [Plaintiff] has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy."  AR at 25.  Those skills included "customer service, sales,

---

[4] "Light work" is defined as:
> [L]ifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities.

20 C.F.R. § 416.967(b); see also Aide R. v. Saul, No. 5:19-02069 ADS, 2020 WL 7773896, at *2 n.6 (C.D. Cal. Dec. 30, 2020).

1 explaining products and delivery, helping ascertain size and type of products, and
2 taking orders." Id. With the assistance of the VE's testimony, the ALJ found that
3 these skills would transfer to the sedentary-work representative occupations of
4 telephone solicitor (DOT 299.357-014) and customer-order clerk (DOT 249.362-026).
5 Id. at 26. Further, the ALJ found that Plaintiff would be able to perform the light-
6 work representative occupations of mail sorter (DOT 222.687-022) and collator
7 operator (DOT 208.685-010). Id. Accordingly, the ALJ concluded she "has not been
8 under a disability, as defined in the Social Security Act ['SSA'] since September 25,
9 2019, the date the application was filed." Id. at 27.

## V.
## PLAINTIFF'S CLAIMS

Plaintiff presents the following two (2) disputed issues: (1) whether the ALJ properly considered Plaintiff's subjective symptom complaints in accordance with the proper legal standards; and (2) whether the ALJ erred in formulating the RFC. Br. at 3–24.

## VI.
## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole. Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).

"Substantial evidence" is evidence that a reasonable person might accept as adequate to support a conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). It is more than a scintilla but less than a preponderance. Id. To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the

evidence that detracts from the Commissioner's conclusion." <u>Reddick</u>, 157 F.3d at 720; see also <u>Hill v. Astrue</u>, 698 F.3d 1153, 1159 (9th Cir. 2012) ("[A] reviewing court . . . may not affirm simply by isolating a 'specific quantum of supporting evidence'" (quoting <u>Robbins</u>, 466 F.3d at 882)). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. <u>Reddick</u>, 157 F.3d at 720–21; see also <u>Molina v. Astrue</u>, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."), <u>superseded by regulation on other grounds as stated in</u> <u>Smith v. Kijakazi</u>, 14 F.4th 1108, 1111 (9th Cir. 2021).

The reviewing court may review only the reasons stated by the ALJ in her decision "and may not affirm the ALJ on a ground upon which [s]he did not rely." <u>Orn v. Astrue</u>, 495 F.3d 625, 630 (9th Cir. 2007). If the ALJ erred, the error may only be considered harmless if it is "clear from the record" that the error was "inconsequential to the ultimate nondisability determination." <u>Robbins</u>, 466 F.3d at 885 (citation omitted).

## VII.
## DISCUSSION

**A.    THE ALJ DID NOT PROVIDE SUFFICIENT REASONS FOR REJECTING PLAINTIFF'S SUBJECTIVE COMPLAINTS**

**1.    Factual background**

At the January 2022 administrative hearing, Plaintiff testified that she was injured in a car accident in 2015, and, since that time, she has no longer been able to work. AR at 37, 54. She suffers from constant pain, especially in her knees, hips, and right shoulder. <u>Id.</u> at 55. The pain is so severe that she has to lay down and elevate her legs throughout the day. <u>Id.</u> at 55. Sometimes she is "complete[ly]" physically unable to leave her house due to her impairments. <u>Id.</u> at 57. She further alleged that she suffers from depression and anxiety. <u>Id.</u> at 55. She takes numerous medications,

7

1  which cause fatigue and brain fog. Id. at 58–59. She also suffers from cardiac
2  symptoms, including vertigo and syncope, which occur several times a week and can
3  last between thirty minutes to a couple of hours. Id. at 59. Plaintiff stated that she
4  could not work a fulltime job because she has bad days and would have to frequently
5  call in sick. Id. at 56. She estimated that, if she had a fulltime sedentary job, she
6  would be unable to work for four to five hours out of the eight-hour workday due to
7  pain. Id. at 58.

8  Plaintiff also filled out a function report. Id. at 311–19. In that report, she
9  alleged that she has difficulty concentrating, sleeping, and moving around, and she is
10 often ill for several days at a time. Id. at 312. She wears a knee brace and uses a cane
11 to ambulate. Id. at 318. She has a service dog. Id. at 313. She can take care of her
12 personal grooming, but she does not wash or shower frequently because it is too
13 exhausting. Id. She can do light chores and play with her pets, but her husband does
14 nearly everything else around the house. Id. She can lift a maximum of fifteen
15 pounds, and she can pay attention for a maximum of ninety minutes at a time. Id. at
16 317. Her medications cause brain fog, fatigue, and a hangover feeling. Id. at 319.
17 Plaintiff also filled out a separate headache questionnaire, in which she alleged
18 suffering from three to ten headaches per month that can last several hours to several
19 days at a time, and an asthma questionnaire, in which she alleged suffering from
20 weekly breathing problems. Id. at 329–31, 332–54.

21 In her decision, the ALJ found that Plaintiff's medically determinable
22 impairments could reasonably be expected to cause the alleged symptoms, but her
23 statements "concerning the intensity, persistence[,] and limiting effects of [the]
24 symptoms" were not entirely consistent with the medical evidence and other evidence
25 in the record. Id. at 21. Specifically, the ALJ found that Plaintiff's subjective
26 symptom allegations were inconsistent with (1) the objective medical evidence; (2) her
27 overall conservative course of treatment; and (3) her reported daily activities. Id. at
28 21–22.

### 2. Applicable law

When a claimant produces objective medical evidence of an impairment that could reasonably be expected to produce the pain or other symptoms alleged, absent evidence of malingering, "the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so." Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020) (citations and internal quotation marks omitted); Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010). "The ALJ must state specifically which symptom testimony is [discounted] and what facts in the record lead to that conclusion." Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996); see also Brown-Hunter v. Colvin, 806 F.3d 487, 489 (9th Cir. 2015). A court must "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [s]he did not rely." Orn, 495 F.3d at 630. "If the ALJ's . . . finding is supported by substantial evidence, [a court] may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002).

Even if an ALJ errs in assessing subjective complaints, the decision will be affirmed where such error is harmless, that is, if it is "inconsequential to the ultimate nondisability determination," or if "the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." Brown-Hunter, 806 F.3d at 492 (citation omitted); Smith, 14 F.4th at 1111 (even where the "modest burden" of the substantial evidence standard is not met, "we will not reverse an ALJ's decision where the error was harmless"). In that regard, the ALJ's finding may be upheld even if not all the ALJ's reasons for rejecting the claimant's testimony are valid. See Bray v. Comm'r Soc. Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009); Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1197 (9th Cir. 2004).

///
///
///

**3. Discussion**

    **a. Conservative treatment**

The ALJ found that Plaintiff's "overall treatment history is also inconsistent with her allegations and supports the residual functional capacity given above. Her treatment has been conservative and noninvasive—not of an amount, frequency, or intensity consistent with the alleged degree of impairment." AR at 22. The ALJ noted that Plaintiff uses "mostly maintenance medications and multiple pain medicines, and alleges that they cause her to have side effects of nausea brain fog, fatigue, hangovers, and constipation." Id. But the ALJ found that these complaints were not reflected in the progress notes. Id. The ALJ also noted that Plaintiff acknowledged that she had "primary relief with medications and a hot bath" and that this "tends to indicate that her symptoms are well controlled with the prescribed treatment." Id. Additionally, though Plaintiff "reported using a cane at home…there is no indication that a doctor prescribed it as medically necessary, and her gait is within normal limits." Id. Finally, the ALJ noted that if Plaintiff's "impairments were so severe that she is unable to work as she alleges, one would expect that she would seek, or her doctors would recommend, additional treatment. However, the record contains scant evidence of any such care." Id.

ALJs may consider evidence of conservative treatment in evaluating a claimant's subjective complaints. See 20 C.F.R. § 416.929(c)(3). "[I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints," the ALJ may find the "alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record." SSR 16-3p, 2017 WL 5180304, at *9; see also Parra v. Astrue, 481 F.3d 742, 750-51 (9th Cir. 2007) (stating that evidence of "conservative treatment is sufficient to discount a claimant's testimony regarding the severity of an impairment"). An ALJ may also consider the effectiveness of treatment when evaluating a claimant's testimony about the symptom severity. SSR 16-3p, 2017 WL 5180304, at *7-8 (listing

treatments and effectiveness of medication as factors to consider in assessing the intensity, persistence, and limiting effects of a claimant's symptoms); see also Tommasetti v. Astrue, 533 F.3d 1035, 1039-40 (9th Cir. 2008) (evidence of responsiveness to treatment can undermine claims of disabling nature of condition). However, here, the ALJ's reliance on Plaintiff's allegedly conservative treatment was improper, for at least (2) reasons.

First, Plaintiff's treatment does not appear conservative. In discussing noting that Plaintiff's treatment largely consisted of medication and hot baths, the ALJ wholly failed to mention that Plaintiff has had multiple steroid and Euflexxa[5] injections into her hip, knees, and shoulder—many of which were reported to be ineffective in controlling Plaintiff's pain. AR at 396 (November 13, 2018 treatment note indicating past steroid injections to Plaintiff's knees "did not help at all" and prescribing Euflexxa injections), 399 (November 13, 2018 treatment note indicating Plaintiff received steroid injection to her right hip), 401 (March 12, 20219 treatment note indicating past steroid injection to hip "did not help at all"), 768 (June 11, 2020 treatment note indicating Plaintiff received Euflexxa injections to bilateral knees), 779 (January 9, 2020 note indicating Plaintiff received steroid injection to right shoulder), 1295 (October 26, 2021 treatment note indicating Plaintiff received a steroid injection to right hip). Additionally, as of the date of the hearing, Plaintiff was taking at least

---

[5] Euflexxa "is used to treat knee pain in patients with joint inflammation" and "is usually used in patients who have no responded to other teratments such as acetaminophen, exercise, or physical therapy." See Euflexxa, WedMD, https://www.webmd.com/drugs/2/drug-94429/euflexxa-intra-articular/details (last visited Aug. 25, 2023).

11

eight (8) medications, including: baclofen[6], lorazepam[7], gabapentin[8], Zofran[9], trazodone[10], Tramadol[11], Naproxen[12], and Imitrex[13]. Br. at 5; AR at 389. Plaintiff had also been prescribed Percocet[14], which the ALJ characterized at the hearing as "a relatively heavy narcotic." Id. at 49. While a single steroid injection may be viewed as conservative treatment, courts routinely characterize multiple pain injections as non-conservative treatment, particularly when in conjunction with other non-conservative treatment, such as narcotic pain medication. See Alexander C. v. Saul, No. 5:19-CV-02125-GJS, 2020 WL 6321765, at *4–5 (C.D. Cal. Oct. 28, 2020) (collecting cases distinguishing one-time injections and multiple injections and finding six steroid

---

[6] "Baclofen is a skeletal muscle relaxant prescribed to treat pain and certain types of spasticity from multiple sclerosis, spinal cord injuries[,] and other spinal cord diseases." Bitler v. Saul, No. 1:18-CV-01062-GSA, 2020 WL 916869, at *2 (E.D. Cal. Feb. 26, 2020).

[7] Lorazepam, commonly sold under the brand name Ativan, is a benzodiazepine medication used to treat anxiety. Hannah Leigh J. v. Saul, No. CV 19-8183-JPR, 2021 WL 1110286, at *3 n.5 (C.D. Cal. Mar. 23, 2021).

[8] "Gabapentin is a medication that was originally developed to treat seizure disorders such as epilepsy. It is also used to treat neuropathic pain. Neuropathic pain is pain from inflamed or damaged nerves." Escobar v. Smith, No. 2:12-CV-0773 GEB DAD, 2013 WL 6389034, at *5 (E.D. Cal. Dec. 6, 2013). "Prescriptions must also be [m]onitor[ed] for emerging or worsening suicidal thoughts or actions and/or depression." Arellano v. Santos, No. 3:18-CV-02391-BTM WVG, 2020 WL 1275650 (S.D. Cal. Mar. 16, 2020), at *5 n.4 (internal quotation marks and citation omitted).

[9] "Zofran (Ondansetron) is an anti-emetic used to relieve nausea and vomiting caused by chemotherapy, radiation treatments, and surgery." Holland v. Colvin, No. 1:14-CV-00143-SMS, 2015 WL 2345481, at *3 n.3 (E.D. Cal. May 14, 2015).

[10] "Trazodone is primarily used to treat depression, but may be used to treat anxiety and insomnia." McNair v. Comm'r of Soc. Sec., No. 3:17-CV-00280-AC, 2018 WL 1746133, at *6 n.3 (D. Or. Apr. 10, 2018).

[11] "Tramadol is a narcotic used to relieve moderate to moderately severe pain." Trejo v. Berryhill, No. EDCV 17-0879-JPR, 2018 WL 3602380, at *8 (C.D. Cal. July 25, 2018).

[12] "Naproxen is a nonsteroidal anti-inflammatory drug used to treat pain or inflammation caused by conditions such as arthritis . . .." Javier A. G. v. Saul, No. SACV 19-2341 PVC, 2020 WL 6940042, at *4 n.5 (C.D. Cal. Nov. 25, 2020) (internal quotation marks and citation omitted).

[13] Imitrex (sumatriptan) "is used to treat migraine headaches. Imitrex will only treat a headache that has already begun. It will not prevent headaches or reduce the number of attacks." Swartz v. Berryhill, No. CV 17-4186 SS, 2018 WL 1311425 (C.D. Cal. Mar. 13, 2018).

[14] Percocet is an oxycodone-acetaminophen product used to relieve moderate to severe pain. McGrath v. Berryhill, No. CV 17–1977–JPR, 2018 WL 2094344, at *7 n.5 (C.D. Cal. May 4, 2018).

injections in conjunction with narcotic pain medication was non-conservative); see also Garrison v. Colvin, 759 F.3d 995, 1015 n.20 (9th Cir. 2014) (expressing doubt that "shots to the neck and lower back qualify as 'conservative' medical treatment"); Contreras v. Berryhill, No. 19-CV-00154-KAW, 2020 WL 619792, at *4 (N.D. Cal. Feb. 10, 2020) (stating "[n]umerous courts have rejected the argument that injections are 'conservative'"); Joyce A. A. v. Saul, No. CV 20-1688 AGR, 2021 WL 1546956, at *3 (C.D. Cal. Apr. 20, 2021) (ALJ's determination that claimant received conservative treatment not supported by substantial evidence where treatment included physical therapy, "Gabapentin, Baclofen, and Tramadol, a narcotic," in conjunction with back injections); Christie v. Astrue, No. CV 10-3448-PJW, 2011 WL 4368189, at *4 (C.D. Cal. Sept. 16, 2011) (finding that, while treatment modalities such as narcotic pain medication and steroid injections "may not be the most aggressive available," they do not constitute "conservative" treatment). Furthermore, Plaintiff was on multiple psychiatric medications for her mental health symptoms. Courts have repeatedly rejected the classification of mental health treatment as "conservative" when a clamant has been prescribed multiple psychiatric drugs. See Drawn v. Berryhill, 728 F. App'x 637, 642 (9th Cir. 2018) (rejecting characterization of treatment as conservative where claimant was taking "a number of psychiatric medications"); Childress v. Colvin, No. EDCV 14-0009-MAN, 2015 WL 2380872, at *14 (C.D. Cal. May 18, 2015) (treatment including years of therapy, prescription antidepressants, and prescription antipsychotics not properly characterized as conservative treatment); Carden v. Colvin, No. CV 13-3856-E, 2014 WL 839111, at *2 (C.D. Cal. Mar. 4, 2014) (collecting cases).

Second, "[t]he fact that treatment may be routine or conservative is not a basis for finding subjective symptom testimony unreliable absent discussion of the additional, more aggressive treatment options the ALJ believes are available." Slover v. Comm'r of Soc. Sec. Admin., No. CV10–258–HZ, 2011 WL 1299615, at * 4 (D.Or. Apr. 4, 2011). Here, despite noting that there was no evidence that Plaintiff pursued

1   "additional treatment," neither the ALJ nor the Commissioner proffered alternative
2   treatment Plaintiff could have sought for her conditions, but chose not to pursue.
3   Indeed, the medical record reflects that injections and medications were largely
4   unsuccessful in controlling Plaintiff's symptoms, and that Plaintiff consistently
5   represented that her symptoms were severe enough to consider surgery.  AR at 407
6   (June 4, 2019 treatment note indicating Plaintiff "believes [her pain] to be severe
7   enough to consider surgery"), 793 (March 12, 2019 treatment note indicating the
8   same), 1291 (October 26, 2021 treatment note indicating the same).  Furthermore, the
9   ALJ did not inquire at the hearing why more aggressive treatment was not pursued.
10  Because the ALJ failed to identify more aggressive treatment Plaintiff could have
11  pursued and failed to consider or inquire about why Plaintiff could not pursue those
12  treatments, faulting Plaintiff for failing to seek more aggressive treatment was
13  improper.  See Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029, at *8 ("We
14  will not find an individual's symptoms inconsistent with the evidence in the record . . .
15  without considering possible reasons he or she may not comply with treatment or
16  seek treatment consistent with the degree of his or her complaints."); Surman v.
17  Comm'r Soc. Sec. Admin., 2018 WL 3491667, at *6 (C.D. Cal. July 19, 2018) (ALJ
18  erred by discounting claimant's subjective allegations in part because there was no
19  indication ALJ considered claimant's explanation that his insurance did not cover
20  psychological treatment, counseling, or therapy).
21          Therefore, given that Plaintiff's treatment was not conservative, Plaintiff's
22  treatments were not obviously "effectively controlled," and the ALJ failed to offer or
23  inquire about any aggressive treatment options, the ALJ's reasoning that Plaintiff's
24  subjective complaints were inconsistent with his conservative treatment does not
25  constitute a "specific, clear, and convincing reason" for discounting her testimony.
26          **b.     Daily activities**
27          The ALJ also improperly relied on Plaintiff's daily activities to reject her
28  subjective complaints.  AR at 22–23.  Daily activities may be grounds for an adverse

credibility finding (1) if the activities are inconsistent with Plaintiff's testimony about her symptoms or (2) if the ALJ makes specific findings relating to the daily activities and their transferability to a work setting. Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007). However, an ALJ must be cautious in concluding that daily activities are inconsistent with testimony about symptoms, because "impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." Garrison, 759 F.3d at 1016; see also Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) ("[T]he mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability."). "The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits . . . and many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (citations omitted).

Plaintiff, however, testified to limited daily activities, such as: limited personal grooming, but she does not wash or shower frequently because it is too exhausting (AR at 59, 313); light chores and playing with her pets, but her husband does nearly everything else around the house (AR at 59, 313), and walking daily for approximately fifteen (15) to thirty (30) minutes (AR at 1284). In addition, she testified that she requires a cane and service dog to ambulate, even at home. AR at 59, 313, 318. The ALJ did not identify any specific inconsistencies between Plaintiff's limited daily activities and her testimony about her symptoms. Furthermore, to the extent Plaintiff had the limited ability to some daily activities, the ALJ failed to explain how Plaintiff's labored efforts to groom herself, assist with light chores, and walk for brief periods with assistance could translate to the consistent requirements of the workplace. See Fair, 885 F.2d at 603 ("[M]any home activities are not easily transferable to what may

1 be the more grueling environment of the workplace, where it might be impossible to
2 periodically rest . . ."); see also Reddick, 157 F.3d at 722 ("[D]isability claimants
3 should not be penalized for attempting to lead normal lives in the face of their
4 limitations.").

5       Therefore, because the ALJ failed to identify any specific inconsistencies
6 between Plaintiff's daily activities and her testimony about her symptoms and failed to
7 show how Plaintiff's daily activities are transferrable to the workplace, the ALJ's
8 citation to Plaintiff's limited daily activities does not constitute a "specific, clear, and
9 convincing reason" for rejecting Plaintiff's testimony.

10           **c.**    **Objective medical evidence**

11       The only other rationale offered by the ALJ was that Plaintiff's testimony was
12 not "entirely consistent with the medical evidence and other evidence in the record."
13 AR at 21–22. However, inconsistency with the medical evidence, alone is not a
14 sufficient basis to support the determination. See Burch v. Barnhart, 400 F.3d 676,
15 681 (9th Cir. 2005) (lack of objective medical evidence to support subjective symptom
16 allegations cannot form the sole basis for discounting pain testimony); Rollins v.
17 Massanari, 261 F.3d 853, 856–57 (9th Cir. 2001); Dschaak v. Astrue, No. CV-10-
18 1010-PK, 2011 WL 4498835, at *1 (D. Or. Sept. 27, 2011) ("[O]nce the[] other bases
19 for the ALJ's decision were discarded as erroneous, the ALJ's [adverse subjective
20 testimony] determination could not rely solely on conflicts with the medical
21 evidence."). As discussed above, the other reasons relied upon by the ALJ to reject
22 Plaintiff's symptom testimony were not "specific, clear, or convincing." As such,
23 even if the ALJ's construction of the medical record was fair, lack of medical evidence
24 supporting Plaintiff's testimony, alone, would not be a proper basis for rejecting her
25 subjective complaints.
26 ///
27 ///
28 ///

16

## VIII.
## RELIEF

### A. APPLICABLE LAW

"When an ALJ's denial of benefits is not supported by the record, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" Hill, 698 F.3d at 1162 (citation omitted). "We may exercise our discretion and direct an award of benefits 'where no useful purpose would be served by further administrative proceedings and the record has been thoroughly developed.'" Id. (citation omitted). "Remand for further proceedings is appropriate where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated." Id.; see also Reddick, 157 F.3d at 729 ("We do not remand this case for further proceedings because it is clear from the administrative record that [c]laimant is entitled to benefits.").

### B. ANALYSIS

Here, remand for further proceedings is warranted. The ALJ's assessment of Plaintiff's testimony is intertwined with other issues raised in the Joint Stipulation, including the consideration of medical evidence and ultimately the fashioning of the RFC. Because it is unclear, considering these issues, whether Plaintiff is in fact disabled, remand here is on an "open record." See Brown-Hunter, 806 F.3d at 495; Bunnell v. Barnhart, 336 F.3d 1112, 1115–16 (9th Cir. 2003). The parties may freely take up all issues raised in the Joint Stipulation, and any other issues relevant to resolving Plaintiff's claim of disability, before the ALJ.

## IX.
## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that judgment be entered **REVERSING** the decision of the Commissioner and **REMANDING** this action

17

for further proceedings consistent with this Order.  **IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

Dated:  August 29, 2023

_____
HONORABLE MARGO A. ROCCONI
United States Magistrate Judge

18